Michael GRINE *v.* BOARD of TRUSTEES,
University of Arkansas

99-18 2 S.W.3d 54

Supreme Court of Arkansas
Opinion delivered October 14, 1999

*Charles M. Kester*, for appellant.

*T. Scott Varady*, Assoc. Gen. Counsel; *Jeffrey A. Bell*, Assoc. Gen. Counsel; *Rhonda M. Thornton*; and *Mark Pryor*, Att'y Gen., by: *Tim Humphries*, Deputy Att'y Gen., for appellees.

*Morgan E. Welch*, for *amicus curiae* Arkansas Trial Lawyers Association.

L AVENSKI R. SMITH, Justice. Michael Grine ("Grine"), appellant, sued the Board of Trustees of the University of Arkansas and certain officials and employees of the University. Appellant's complaint alleged claims for breach of contract, promissory estoppel, constructive fraud, and fraud and sought an injunction to stop the University from enforcing its rule requiring completion of a doctorate within seven years. Grine appeals the Washington County Chancery Court's order granting appellees's motion to dismiss. The chancellor ruled that the doctrine of sovereign immunity as set out in Ark. Const., Art. 5, § 20, prohibited the suit. This appeal involves interpretation or construction of the Arkansas Constitution. Hence, we take jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(a)(1). Grine contends his claims state exceptions to the doctrine and should be permitted to go forward. We disagree and affirm.

*Facts*

Grine failed to obtain his doctorate in Marketing at the University of Arkansas while working under the advice and direction of Appellee Dr. Dub Ashton ("Ashton"). Grine asserts Ashton caused this by acting in bad faith in giving him an unworkable dissertation topic, and then in giving him inaccurate, arbitrary, and false information. Grine alleges he told Ashton in July 1995, that he had to finish his doctorate by October 1995, or he would lose a teaching position in Oklahoma, and that Ashton told him it was not a problem. Then, as the summer of 1995 ended, Grine

states Ashton told him he was not optimistic Grine could finish by October. Grine states some drafts had been with Ashton for a year, and he had not read them. Grine asserts Ashton ceased to cooperate until Grine went to the department head to complain. Then, Grine alleges, Ashton read the drafts within a week of his discussion with the department head and returned a negative response when all previous responses had been positive. Grine also asserts that in a subsequent meeting Ashton told him he was angry because Grine had gone to the department head. Some time later, Ashton told Grine that Grine was "unable to conceptualize what a dissertation should look like and that he should just give up." Grine then took his work to three other professors who told him that his work was inferior in quality. According to Grine, one professor said she was not sure the topic could be developed into anything acceptable as a dissertation.

Grine believes Ashton initially acted out of simple ignorance because Ashton had failed to stay abreast of developments in the field of marketing. Grine asserts Ashton later realized that his ignorance would become manifest to his colleagues during the dissertation process. This, according Grine, made Ashton become deliberate in avoiding him and in giving him false information. Grine asserts that Ashton's actions ultimately caused him to fail to complete his doctorate within the seven year period allowed by the University. As to the other University officials, Grine contends they should be enjoined from enforcing the seven-year doctoral completion period so that he may continue pursuit of his doctorate.

On appeal, Grine argues that the trial court erred because Grine properly pleaded exceptions to sovereign immunity. More particularly, appellant avers that his complaint alleged acts that were ultra vires, bad faith, and arbitrary and capricious actions, and thus not entitled to immunity. Grine also argues sovereign immunity is inapplicable to the individuals because they were sued for acts of bad faith for which they and not the State would pay.

## Standard of Review

In reviewing a trial court's decision on a motion to dismiss under Ark. R. Civ. P. 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Goforth v. Smith*, 338 Ark. 65, 991 S.W.2d 579 (1999). In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and pleadings are to be liberally construed. *Hames v. Cravens*, 332 Ark. 437, 442, 966 S.W.2d 244 (1998). However, our rules require fact pleading. A complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Brown v. Tucker*, 330 Ark. 435, 438, 954 S.W.2d 262 (1997); Ark. R. Civ. P. 8(a)(1). It should also be noted that we have applied a general policy against intervention by the courts in academic and discipline matters best left to school authorities. *Smith v. Denton,* 320 Ark. 253, 895 S.W.2d 550 (1995); *Henderson State University v. Spadoni,* 41 Ark. App. 33, 848 S.W.2d 951 (1993).

## Sovereign Immunity

Grine asserts the chancellor erred in finding the defendants immune because they acted in bad faith and therefore do not enjoy the benefit of immunity. Sovereign immunity for the State of Arkansas arises from express constitutional declaration. Article 5, section 20, of the State Constitution provides: "The State of Arkansas shall never be made a defendant in any of her courts." Suits against the State are expressly forbidden by this provision. *Beaulieu v. Gray*, 288 Ark. 395, 705 S.W. 2d 880 (1986); *Page v. McKinley*, 196 Ark. 331, 118 S.W.2d 235 (1938). As we stated long ago in *Pitock v. State*, 91 Ark. 527, 535 (1909), "[A] sovereign State cannot be sued except by its own consent; and such consent is expressly withheld by the Constitution of this State." Recently, we reiterated this express prohibition in *Brown v. Arkansas State HVACR Lic. Bd.*, 336 Ark. 34, 984 S.W.2d 402 (1999). In *Brown,* we pointed out that sovereign immunity is jurisdictional immunity from suit, and where the pleadings show

the action is one against the State, the trial court acquires no jurisdiction. However, unlike subject-matter jurisdiction, sovereign immunity can be waived. *Newton v. Etoch*, 332 Ark. 325, 331, 965 S.W.2d 96 (1998); *State v. Tedder*, 326 Ark. 495, 932 S.W.2d 755 (1996); *Cross v. Arkansas Livestock & Poultry Comm'n*, 328 Ark. 255, 943 S.W.2d 230 (1997); *Department of Human Servs. v. Crunkleton*, 303 Ark. 21, 791 S.W.2d 704 (1990). The doctrine makes no distinction between actions in equity and actions at law. *Id.*

 While the State of Arkansas constitutionally possesses sovereign immunity, its officers and employees do not. However, the legislature has chosen to grant limited immunity to the State's officers and employees by statute except to the extent the employee has liability coverage. *See* Ark. Code Ann. § 19-10-305 (Repl. 1998). State officers and employees acting without malice within the course and scope of their employment are immune from an award of damages in litigation. *Cross v. Arkansas Livestock & Poultry Comm'n*, 328 Ark. 255, 943 S.W.2d 230 (1997). Suits against officers and employees alleged to be malicious are suits against the officer or employees personally, and they are liable to the extent anyone would be liable under tort law. *Matthews v. Martin*, 280 Ark. 345, 658 S.W.2d 374 (1983). In the case where the action is intended to prevent a State officer from acting unlawfully, their office does not shield them. In such a cases we treat the suit as an action against the officer and not as a suit against the State. *Federal Compress & Warehouse Co. v. Call, Commissioner of Labor*, 221 Ark. 537, 254 S.W.2d 319 (1953); *See also Pitcock v. State*, 91 Ark. 527 (1909). A State can only act through its officers. *Pitock v. State*, 91 Ark. 527 (1909).

 The first issue to be resolved is whether appellant's action constitutes a suit against the State. To the extent that it does, the Constitution bars it from our State's courts. Appellant's complaint does not name the State of Arkansas. However, that is not determinative. In sovereign-immunity cases, we long ago established a test that looks to identify the real party against which relief is sought, not merely to the nominal defendant. *Page v. McKinley*, 196 Ark. 331, 118 S.W.2d 235, 238 (1938). *Newton v.*

*Etoch*, 332 Ark. 325, 965 S.W.2d 96 (1998). Even where the State is not named as a defendant, if a judgment for the plaintiff will operate to control the action of the State or subject it to liability, we treat the suit as one against the State. *Id.* Appellant named as defendants the University's trustees, President B. Alan Sugg, Chancellor John A. White, Associate Dean Dub Ashton, and all agents and employees of the University responsible for supervising HH.d. marketing candidates. In his prayer for relief, appellant seeks injunctive relief against the University to restrain it from enforcing its policy limiting doctoral pursuit to seven years. He also seeks money damages against all the named defendants and attorney's fees and costs.

　　█ Based on our review of the record, we hold that appellant's claim for injunctive relief is unquestionably a legal claim against the State of Arkansas and therefore barred from this State's courts by Article 5, section 20, of the Arkansas Constitution. Were the requested relief to be granted, the University, not any particular individuals, would have its actions controlled by court order. We have previously held that a suit against the Board of Trustees of the University is a suit against the State. *State Comm'r of Labor v. U. of Ark.*, 241 Ark. 399, 407 S.W.2d 916 (1966). Appellant's complaint names the Board of Trustees, and it is apparent on its face that the gravamen of the relief requested against the Trustees and the school's officers implicate the State's authority and financial resources. Therefore, we affirm the chancellor's dismissal of appellant's complaint against the University's Board of Trustees, its president, its chancellor and against "all agents and employees of the University charged with the evaluation and supervision of candidates for the degree of Ph.D. in marketing" as barred by sovereign immunity.

　　█ Appellant argues that his complaint states an exception to the doctrine of sovereign immunity. He contends that he alleged facts sufficient to establish the recognized immunity exception which permits a suit against State officials or agencies to enjoin *ultra vires*, bad faith, and arbitrary and capricious actions. *Cammack v. Chalmers*, 284 Ark. 161, 680 S.W.2d 689 (1984).

Equity does have jurisdiction to enjoin or restrain officers of State agencies where the act to be restrained is *ultra vires*, wanton, capricious, in bad faith, injurious, or arbitrary. *Toan, Comm'r v. Falbo*, 268 Ark. 337, 595 S.W.2d 936 (1980); *See also Game Comm'n v. Eubank*, 256 Ark. 930, 512 S.W.2d 540 (1974); *Shellnut v. Ark. State Game & Fish Comm.*, 222 Ark. 25, 258 S.W.2d 570 (1953). However, reading appellant's complaint in the light most favorable to him, we hold that the complaint does not state facts sufficient to show that any act on the part of the University or any of its officials was *ultra vires*, in bad faith, or arbitrary. Appellant acknowledges that the administration exercises discretion in granting the extension, and that it does not do so in every case. He fails to allege any specific act or acts of the named administration officials that would remove immunity with respect to their declination to extend additional time to complete the doctorate requirements.

### Liability of Individual Defendants

Grine also asserts Dr. Ashton is liable personally for acts of bad faith, and that he would be responsible personally for any damages assessed. As such, Grine alleges a cause of action against Ashton personally and that the State is not involved. The remaining individual defendants are alleged to be liable based upon Ashton's actions. As stated above, State officials and employees do not enjoy the constitutional immunity accorded the state but have immunity granted by statute unless they are shown to have acted with malice outside the scope of their employment. *Cross, supra.* "[A]n officer or employee who acts maliciously or outside the scope of his employment is not protected by § 19-10-305(a). (Citations omitted.)" *Newton v. Etoch*, 332 Ark. 325, 965 S.W. 2d 96 (1998).

Intentional torts overcome the immunity extended to State officers and employees. *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992). Thus, in considering the complaint on a motion to dismiss, if the acts or omissions complained of are alleged to be malicious and outside the course and scope of employment, then the coffers of the State are not implicated, and

the suit is not one against the State. Under these conditions, Article 5, section 20, of the Constitution is not implicated. Grine's complaint states only conclusions with no factual support against all defendants with the exception of Dr. Ashton. Therefore, with respect to those defendants, we affirm their dismissal on the basis of their statutory immunity.

In the absence of appellant's sole claim for equitable relief, chancery jurisdiction is lacking. As a general rule, equity jurisdiction exists only when the remedy at law is inadequate. *Townsend v. Arkansas State Highway Comm'n*, 326 Ark. 731, 933 S.W.2d 389 (1996); *Bryant v. Picado*, 338 Ark. 227, 996 S.W.2d 17 (1999). A review of Grine's complaint reveals equity jurisdiction is dependent upon his right to seek an injunction that the University suspend or reset the clock on its rule that doctorates be completed within seven years of a candidate's declaration of an intent to pursue a doctorate. We have already held that sovereign immunity bars the claim for injunctive relief against the State. The trial court acquires no jurisdiction when sovereign immunity is applicable. *Brown, supra*. Hence, once the equitable claim ceased, appellant essentially brought nothing but legal claims before the chancery court. Ordinarily, the equity clean-up doctrine would permit the chancery court to decide all other issues once it acquires jurisdiction for one equitable purpose. *Burns v. First Nat'l Bank*, 336, 985 S.W.2d 747 (1999). In the instant case, the court acquired no jurisdiction over any equitable claims because of the State's immunity. With no equitable jurisdiction ever acquired, the chancery court was "wholly incompetent" to grant the relief sought by appellant. *Liles v. Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986). Therefore, appellant's remaining purely legal claims for damages against Dr. Ashton should have been dismissed without prejudice.

We affirm.