ARKANSAS TECH UNIVERSITY; Mary Ann Salmon,
Steve A. Sutton, Dale Brown,
Dr. Dean McDougal, Individually and
as Members of the Board of Trustees
of Arkansas Tech University;
Dr. Robert Brown, Individually and as
President of Arkansas Tech University *v.*
Michael A. LINK, Stanley Lombardo,
Charles A. Mitchell, Steve A. Shry,
William C. Titus, Margaret Wilkerson,
Marilyn Bocksnick

99-665 17 S.W.3d 809

Supreme Court of Arkansas
Opinion delivered June 1, 2000

*Ellen Bass Brantley*, Chancellor;

*Thomas W. Pennington; Mark Pryor,* Att'y Gen., by: *Dennis R. Hansen,* Ass't Att'y Gen., and *Sherri L. Robinson,* Ass't Att'y Gen.; *Timothy O. Dudley;* and *Streett & Coutts,* by: *Alex G. Streett,* for appellants.

*Richard C. Downing, P.A.,* by: *Richard C. Downing; Pulliam & Wright, P.A.,* by: *Janet L. Pulliam* and *Randall G. Wright; Dunham & Faught,* by: *James Dunham,* for appellees.

ANNABELLE CLINTON IMBER, Justice. The appellees, who are employees of Arkansas Tech University ("ATU"), filed this action in the Chancery Court of Pope County against ATU, the president of ATU, and the members of its Board of Trustees. At issue in this interlocutory appeal by ATU and the Board is the trial court's denial of their motion to dismiss appellees' second amended petition for declaratory judgment and injunction. Specifically, ATU and the Board argue on appeal that appellees are barred from filing this suit against the State by the doctrine of sovereign immunity; that appellees' claims against a state agency and state officials are solely for breach of contract and, therefore, should be brought before the Arkansas Claims Commission; and that appellees have not pled facts sufficient to state a claim under any recognized exception to the sovereign-immunity doctrine. We hold that the trial court should have dismissed appellees' second

amended petition because it fails to state a claim upon which relief can be granted.

Beginning in the 1960s, ATU provided its employees who had reached the age of fifty-five and who had worked at the university for twenty years with the ability to retire and receive health insurance for the rest of their lives, with ATU bearing the full cost of that insurance. This unwritten policy was never adopted by the Board of Trustees; nor was it included in any written contract or state statute. When the cost of health insurance began to increase dramatically in 1993, ATU began to reconsider its policy of providing health insurance to its eligible retirees at no cost to them. A presidential task force was created to study the issue, and in June 1997, Dr. Robert Brown, ATU President, presented a report on health insurance to the Board of Trustees. He presented the Board with four possible options regarding post-retirement health-insurance benefits. The Board voted to (1) let existing eligible retirees maintain their lifetime health-insurance coverage, with ATU bearing the full cost; (2) give employees age fifty-five or older who have served ATU for at least twenty years the option of retiring by July 1, 1998, in order to receive the same health-insurance benefits as current retirees; and (3) give employees not yet meeting the fifty-five/twenty criteria the ability to retire upon reaching age sixty after they have served ATU for at least ten years, at which time the same health-insurance benefits given to current retirees would be provided by ATU until those retirees become eligible for Medicare. After the Board adopted these changes, this lawsuit was filed.

The original plaintiffs below, the appellees on appeal, were seven tenured ATU professors. Three of those plaintiffs satisfied the fifty-five/twenty requirement. The appellees filed a petition for declaratory judgment on December 29, 1997, in which they alleged that ATU had contractually obligated itself to provide the lifetime health-insurance benefit to those retirees meeting the fifty-five/twenty criteria at no cost to the retirees, and that the benefit was an essential term of the parties' employment agreement. Appellees also alleged that the health-insurance benefit was deferred compensation in which they had a "vested contract right" or a "contractual property right," and that the Board's action was "a taking of plaintiff's vested property rights and a breach of contract." In count one of the petition, the appellees asked the trial court to "determine the actions of Defendants constitute a breach of the parties' employ-

ment agreements[.]" In count two, the appellees asked the court to enter a preliminary injunction to protect a vested contract right. In count three, they asked the court to find ATU's actions actionable under 42 U.S.C. § 1983; and, in count four, they asked for attorney's fees and costs pursuant to 42 U.S.C. § 1988 and Ark. Code Ann. § 16-22-308.

ATU and the Board moved to dismiss, and argued that the trial court was without subject-matter jurisdiction because the appellees' claim is for breach of contract, which, under the doctrine of sovereign immunity, is cognizable solely in the Arkansas Claims Commission. The appellees responded by arguing that, regardless of the sovereign-immunity doctrine, the State could still be enjoined by a court of equity when the actions of the State are illegal, unconstitutional, *ultra vires*, in bad faith, or arbitrary. They also argued that 42 U.S.C. § 1983 authorizes the court to enjoin state agencies and officers from depriving people of their constitutional rights. Furthermore, appellees argued that their lawsuit was not for breach of contract, but sought declaratory judgment to determine the parties' contract rights and an injunction to prohibit an unconstitutional taking of property rights. In support of these arguments, the appellees relied on the case of *Jones v. Cheney*, 253 Ark. 926, 489 S.W.2d 785 (1973). ATU replied that sovereign immunity was nonetheless a bar to the action because injunctive relief was not necessary to the claim, and the appellees had not pled specific facts showing bad faith, *ultra vires* acts, or unconstitutionality sufficient to waive sovereign immunity. After a hearing, the trial court dismissed the members of the Board in their individual capacities, but refused to dismiss ATU and the board members in their official capacities based on certain exceptions to the sovereign-immunity doctrine established by this court in the case of *Toan v. Falbo*, 268 Ark. 337, 595 S.W.2d 936 (1980), and based on the provisions of 42 U.S.C. § 1983, that authorize state courts to enjoin state agencies and officers from depriving people of constitutional rights. On January 30, 1998, ATU and the Board filed an answer in which they again argued that the trial court was without jurisdiction and alleged the affirmative defense of sovereign immunity, as set forth in Article 5, section 20, of the Arkansas Constitution.

In June of 1998, Judge Swindell recused from the case, whereupon Judge Brantley was assigned to preside over the case. ATU and the Board then moved for summary judgment, contending that 42

U.S.C. § 1983 was inapplicable and sovereign immunity deprived the trial court of jurisdiction because the claim by the appellees was in essence a contract dispute. The trial court granted ATU and the Board summary judgment on the 42 U.S.C. § 1983 claim, but denied summary judgment on the issue of whether the appellees have a property interest or right in the post-retirement health-insurance benefit.

While the motion for summary judgment was pending, the appellees filed two amended petitions for declaratory judgment. The first amended petition added a plaintiff, and also added Robert Brown, president of ATU, as a defendant. The second amended petition added allegations that ATU and the Board had acted *ultra vires* and without legitimate authority, as well as arbitrarily and capriciously, in depriving the appellees of a vested property right which existed pursuant to contractual agreements. ATU and the Board moved to dismiss the first and second amended petitions and once again argued the doctrine of sovereign immunity.

On May 10, 1999, after conducting a hearing, the trial court issued its order on the motion to dismiss appellees' second amended petition for declaratory judgment. The trial court dismissed the suit against President Brown and found that ATU and the Board were, for purposes of sovereign immunity, the State of Arkansas. The trial court also ruled that the second amended petition failed to state a claim that the actions of ATU and the Board were *ultra vires*, arbitrary, or capricious. However, after noting the appellees' reliance on the case of *Jones v. Cheney*, the trial court ruled that the second amended petition did "allege a claim that [the appellees] had a vested property right to the insurance benefits," and that "the action of the Board of Trustees deprived them of this right in violation of the Constitutions of Arkansas and the United States." Based on this ruling, the trial court refused to dismiss the second amended petition on sovereign-immunity grounds. From the trial court's denial of their motion to dismiss the second amended petition for declaratory judgment, ATU and the Board bring this interlocutory appeal pursuant to Ark. R. App. P—Civil 2(a)(10). Our jurisdiction is invoked pursuant to Ark. Sup. Ct. R. 1-2(a)(1).

In this appeal, ATU and the Board contend that the constitutional doctrine of sovereign immunity bars the appellees from filing their petition for declaratory judgment and injunction in

any state court. In reviewing the trial court's decision on a motion to dismiss under Ark. R. Civ. P. 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Grine v. Board of Trustees*, 338 Ark. 791, 2 S.W.3d 54 (1999). In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.* However, our rules require fact pleading, and a complaint must state facts, nor mere conclusions, in order to entitle the pleader to relief. *Id.* Furthermore, sovereign immunity is jurisdictional immunity from suit, and jurisdiction must be determined entirely from the pleadings. *Department of Human Servs. v. Crunkleton*, 303 Ark. 21, 791 S.W.2d 704 (1990). The issue we must decide in this appeal is whether the doctrine of sovereign immunity applies to bar the appellees' only remaining claim that ATU and the Board unconstitutionally deprived them of a vested property right in health-insurance benefits that arose from purported contractual agreements.

 In the recent case of *Grine v. Board of Trustees*, we summarized our rules regarding the doctrine of sovereign immunity:

> Sovereign immunity for the State of Arkansas arises from express constitutional declaration. Article 5, section 20, of the State Constitution provides: 'The State of Arkansas shall never be made a defendant in any of her courts.' Suits against the State are expressly forbidden by this provision. *Beaulieu v. Gray*, 288 Ark. 395, 705 S.W.2d 880 (1986); *Page v. McKinley*, 196 Ark. 331, 118 S.W.2d 235 (1938). As we stated long ago in *Pitock v. State*, 91 Ark. 527, 535 (1909), '[A] sovereign State cannot be sued except by its own consent; and such consent is expressly withheld by the Constitution of this State.' Recently, we reiterated this express prohibition in *Brown v. Arkansas State HVACR Lic. Bd.*, 336 Ark. 34, 984 S.W.2d 402 (1999). In *Brown*, we pointed out that sovereign immunity is jurisdictional immunity from suit, and where the pleadings show the action is one against the State, the trial court acquires no jurisdiction. However, unlike subject-matter jurisdiction, sovereign immunity can be waived. *Newton v. Etoch*, 332 Ark. 325, 331, 965 S.W.2d 96 (1998); *State v. Tedder*, 326 Ark. 495, 932 S.W.2d 755 (1996); *Cross v. Arkansas Livestock & Poultry Comm'n*, 328 Ark. 255, 943 S.W.2d 230 (1997); *Department of Human Servs. v. Crunkleton*, 303 Ark. 21, 791 S.W.2d 704 (1990). The doctrine makes no distinction between actions in equity and actions at law. *Id.*

*Grine v. Board of Trustees,* 338 Ark. at 796-97, 2 S.W.3d at 58. Furthermore, a suit against a state official in his or her official capacity is not a suit against that person, but rather is a suit against that official's office. *Brown v. Arkansas State HVACR Lic. Bd.*, 336 Ark. 34, 984 S.W.2d 402 (1999). A suit against the board of trustees of a state university is a suit against the State, and is barred by the doctrine of sovereign immunity. *State Comm'r of Labor v. University of Ark.*, 241 Ark. 399, 407 S.W.2d 916 (1966).

■■ Specifically, ATU and the Board argue that this suit by the appellees is essentially a breach-of-contract claim and, thus, is barred. They are correct that breach-of-contract claims must be heard by the Arkansas Claims Commission. *Hanley v. Arkansas State Claims Comm'n.*, 333 Ark. 159, 970 S.W.2d 198 (1998). The appellees counter this argument by suggesting that their suit is not for breach of contract, but is merely a petition for declaratory judgment. According to our case law, however, such a distinction is not necessarily determinative. Rather, the decisive issue is whether the State's financial obligations would increase if the plaintiffs prevail in their suit. *Commission on Judicial Discipline and Disability v. Digby*, 303 Ark. 24, 792 S.W.2d 594 (1990). If so, the action is barred by the doctrine of sovereign immunity. *Id.* As the rule has been more commonly stated, if a judgment for the plaintiff will operate to control the action of the State or subject it to liability, the suit is one against the State and is barred by the doctrine of sovereign immunity. *Grine v. Board of Trustees, supra.; Fireman's Ins. Co. v. Arkansas State Claims Comm'n*, 301 Ark. 451, 784 S.W.2d 771 (1990); *Page v. McKinley*, 196 Ark. 331, 118 S.W.2d 235 (1938).

In the present case, the appellees petitioned the chancery court for declaratory judgment and an injunction. In their prayer for declaratory judgment, the appellees asked the chancery court to determine that the actions of ATU and the Board constituted a breach of their employment agreements. This is essentially a breach-of-contract claim that should be brought in the Arkansas Claims Commission. Additionally, the appellees asked the court to enter "an injunction regarding further implementation of the new policy and [to] reinstate [appellees'] contract rights." If the appellees were to prevail on their claim for an injunction and reinstatement of their "contract rights" to lifetime health insurance upon retirement at no cost to them, ATU and the State of Arkansas would be required to expend money to provide such insurance.

Because the State's financial obligations would increase, the suit would be barred by the doctrine of sovereign immunity unless an exception to the doctrine of sovereign immunity is applicable.

■ The appellees argue that they properly pled certain exceptions to the doctrine of sovereign immunity in their second amended petition. One of those exceptions is that equity has jurisdiction to enjoin or restrain State officials or agencies from acts which are *ultra vires*, in bad faith, or arbitrary and capricious. *Grine v. Board of Trustees, supra; Villines v. Lee*, 321 Ark. 405, 902 S.W.2d 233 (1995); *Cammack v. Chalmers*, 284 Ark. 161, 680 S.W.2d 689 (1984); *Toan v. Falbo*, 268 Ark. 337, 595 S.W.2d 936 (1980); *Game and Fish Comm'n v. Eubank*, 256 Ark. 930, 512 S.W.2d 540 (1974); *Harkey v. Matthews*, 243 Ark. 775, 422 S.W.2d 410 (1967). The trial court, in ruling on the motion to dismiss, found that this exception was inapplicable. Specifically, the trial court found that appellees' second amended petition failed to state a claim when it alleged that the actions of ATU and the Board were *ultra vires*, arbitrary, and capricious.[1] Thus, the trial court granted the appellants' motion to dismiss in part.[2]

■ The trial court did, however, refuse to dismiss the second amended petition with respect to the appellees' claims that ATU and the Board violated Article 1, section 10, of the United States Constitution and Article 2, section 17, of the Arkansas Constitution regarding impairment of contracts and Article 2, section 22, of the Arkansas Constitution regarding the unconstitutional taking of private property without just compensation. We have stated on one occasion, albeit without citing authority, that illegal or unconstitutional acts by the State may be enjoined despite the doctrine of sovereign immunity. *Cammack v. Chalmers, supra.*[3] However, in affirming the chancellor's finding that he had jurisdiction to enjoin the action of the University of Arkansas Trustees, we expressly

---

[1] The trial court made no finding as to bad faith, and bad faith was not pled by the appellees.

[2] The appellees have not cross-appealed this ruling.

[3] The appellees also cite the case of *Arkansas State Med. Bd. v. Leipzig*, 299 Ark. 71, 770 S.W.2d 661 (1989), for the proposition that unconstitutional acts by the State may be enjoined despite the doctrine of sovereign immunity. The plaintiffs in that case, however, sought an injunction pursuant to 42 U.S.C. § 1983. Here, the trial court ruled that ATU and the Board were entitled to summary judgment on the 42 U.S.C. § 1983 claim, and that ruling has not been appealed. Thus, *Arkansas State Med. Bd. v. Leipzig* is inapposite.

confined our holding to the facts of that case: "We reach a limited decision today that does not allow the University of Arkansas Trustees to ignore their commitments to donors." *Id.*, 284 Ark. at 163, 680 S.W.2d at 690. We also noted that a statute designated the Board of Trustees of the University as a corporate entity capable of being sued, citing Ark. Code Ann. § 4-28-209 (Repl. 1996) and Ark. Code Ann. §§ 6-64-201—6-64-202 (Repl. 1996). *Id.* Furthermore, *Cammack v. Chalmers* dealt with a parcel of real property that had been conveyed to the Board of Trustees of the University of Arkansas along with a separate contract, delivered simultaneously with the deed, which stipulated that the Board of Trustees would develop the property into the University's "Cammack Campus." *Cammack v. Chalmers, supra.* There, we were presented with a sovereign-immunity-doctrine issue in the context of a conditional gift of real property to the State. The facts presented here are distinctly different. In any event, a complaint alleging illegal and unconstitutional acts by the State as an exception to the sovereign-immunity doctrine is not exempt from complying with our rules that require fact pleading:

> A pleading which sets forth a claim for relief ... shall contain (1) a statement in ordinary and concise language of *facts showing* that the court has jurisdiction and is the proper venue and *that the pleader is entitled to relief* ...

Ark. R. Civ. P. 8(a)(1) (emphasis added). Rule 12(b)(6) provides for the dismissal of a complaint for "failure to state facts upon which relief can be granted." A complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997). Thus, we must determine whether the appellees have pled facts sufficient to state a claim based on the unconstitutional impairment or deprivation of a vested property right. In doing so, we look to the case of *Jones v. Cheney*, 253 Ark. 926, 489 S.W.2d 785 (1973).

The appellees contend that the allegations in the second amended petition sufficiently plead a deprivation of a vested property right because they are similar to the facts alleged in *Jones v. Cheney.* While this court did not mention the doctrine of sovereign immunity in *Jones v. Cheney*, we held that the constitutional prohibition against the impairment of contracts applies not only to contracts between individuals, but also to contracts made by the

State or one of its agencies. In that case, a former state official petitioned for a writ of mandamus directing the State Auditor to pay him his statutory retirement benefits. The official had met all of the requirements of Act 148 of 1965, which established the pension plan at issue, with the exception of being age sixty-five. However, before the official reached the age of sixty-five, the General Assembly passed Act 167 of 1967, which amended the 1965 law to require service in any one of several named State offices for at least ten years. The official did not meet this new requirement because, while he had served the State for ten years, he had not served ten years in any one position. Thus, the Auditor denied the official his retirement benefits, and the official sued for a writ of mandamus. The trial court granted the official's petition and entered a mandamus order directing the Auditor to pay the official his retirement benefits under Act 148 of 1965, because his rights to the benefits had become vested prior to the change in the law. We affirmed the trial court's issuance of a writ of mandamus against the State and held that the official's rights vested in him prior to the change in the law, and that he had a constitutional right to have his vested right remain unimpaired. *Id.*

*Jones v. Cheney* is clearly distinguishable from the present case in three respects. First, as previously noted, this court did not directly address the issue of sovereign immunity in that case. Second, the retirement plan at issue in *Jones v. Cheney* was based on voluntary contributions from its member employees. We held that such a system represents delayed compensation for services rendered in the past and due under a contractual obligation and is not a gratuitous allowance in which the pensioner has no vested right. *Id.* The post-retirement health-insurance benefit in this case, on the other hand, was funded entirely by ATU out of State funds and the retirees contributed no funds. It was merely a gratuitous allowance. Third, the retirement plan in *Jones v. Cheney* was established by the Arkansas General Assembly; that is, it was created by the enactment of a statute. *Id.* In contrast, the appellees' pleadings in this case fail to state facts showing that the post-retirement health-insurance benefit was created by statute. Despite these distinctions, the appellees argue that *Jones v. Cheney* should be applied to allow this suit against the State. We disagree. In their second amended petition, appellees alleged that ATU and the Board contractually obligated themselves to provide lifetime health-insurance benefits to retirees

meeting the fifty-five/twenty criteria at no cost to the retirees and thus created a vested property right in the appellees. They failed, however, to plead facts comparable to those in *Jones v. Cheney* from which the trial court might determine that they had a vested property right. Thus, the trial court erred in finding otherwise.

In *Jones v. Cheney*, we relied heavily on the case of *Hickey v. Pension Board of City of Pittsburgh*, 106 A.2d 233 (Pa. 1954) to conclude that Cheney's rights became firmly vested prior to the passage of the 1967 Act. *Jones v. Cheney, supra.* However, *Hickey v. Pension Board of City of Pittsburgh* is clearly distinguishable from the present case for the same reasons as *Jones v. Cheney*; that is, the decision did not directly address the issue of sovereign immunity, the plan at issue was based on voluntary contributions from employees, and the plan was created by the Pennsylvania legislature. Likewise, *McCarty v. Board of Trustees*, 45 Ark. App. 102, 872 S.W.2d 74 (1994), which cited *Jones v. Cheney* with approval, is inapposite for similar reasons. Moreover, the Arkansas Court of Appeals held in *McCarty v. Board of Trustees* that the decision of the Board of Trustees was arbitrary and capricious, thus placing that case into a sovereign-immunity exception which is no longer a part of this case. The cases of *Daggett v. St. Francis Levee District*, 226 Ark. 545, 291 S.W.2d 254 (1956) and *Chandler v. Board of Trustees*, 236 Ark. 256, 365 S.W.2d 447 (1963) were also cited in *Jones v. Cheney*. Yet, they have little, if any, relevance to this case. *Daggett v. St. Francis Levee District* was an illegal-exaction suit brought by a taxpayer to enjoin the levee district directors from starting a retirement plan for the levee district's employees. *Daggett v. St Francis Levee District, supra.* Although we discussed the compensatory nature of such retirement systems in *Daggett*, the dispositive issue in that case was whether the legislature intended by the enactment of a statute to give the levee district the authority to adopt a retirement plan. *Daggett v. St Francis Levee District, supra.* No claim based on statutory law is at issue in this appeal. Likewise, *Chandler v. Board of Trustees*, another illegal-exaction case, dealt with constitutional provisions not at issue here.

Finally, both parties have cited our decision in *City of North Little Rock v. Vogelgesang*, 273 Ark. 390, 619 S.W.2d 652 (1981). There, former North Little Rock police officers sued the city to recover accumulated sick-leave pay allegedly due to each of them pursuant to a city ordinance. The city ordinance allowing for the

sick-leave pay upon retirement had been modified so as to require ten years of service, and none of the former police officers met the ten-year requirement. The former police officers argued that they had a vested contractual right to their accumulated sick leave because (1) they had contributed to the plan, not in money but by coming to work; and (2) the plan was held out to them as a fringe benefit at the time of their employment. We rejected both of those arguments and held that their right to the accumulated sick leave continued to vest as long as the plan was in place, but the city was free to prospectively modify the plan if that course was found to be advisable. *Id.* Despite some apparent factual similarities, there are several reasons why the *City of North Little Rock v. Vogelgesang* case is not applicable to the issues in the case before us now. First, in that case, the former police officers sued to recover accumulated sick-leave pay; that is, they sued for money damages rather than an injunction. The exception to the sovereign–immunity doctrine for unconstitutional acts pronounced by this court in *Cammack v. Chalmers* was limited to actions for injunctions. *Cammack v, Chalmers, supra.* There is no such exception for suits seeking money damages. Second, the plan at issue in *City of North Little Rock v. Vogelgesang* was created by a North Little Rock city ordinance. In this case, the post-retirement health–insurance benefit at issue was not created by an ordinance or a statute. Rather, it was the result of a purported contractual agreement. Third, the former police officers brought suit against a city in *City of North Little Rock v. Vogelgesang.* Cities in Arkansas do not share in the State's sovereign immunity, and they are capable of suing and being sued. Ark. Code. Ann. § 14-54-101 (Repl. 1998); *Hot Springs Adver. & Promotion Comm'n v. Cole,* 317 Ark. 269, 878 S.W.2d 371 (1994). Thus, sovereign immunity was not an issue before this court in *City of North Little Rock v. Vogelgesang,* as it is here.

We therefore hold, pursuant to our decision in *Jones v. Cheney,* that the appellees have failed to properly plead facts sufficient to state a claim based on the unconstitutional impairment or deprivation of a vested property right. Accordingly, the exception to the sovereign-immunity doctrine set forth in *Cammack v. Chalmers* is not applicable, and this suit by appellees against ATU and its Board of Trustees is barred by the doctrine of sovereign immunity as set forth in Article 5, section 20, of the Arkansas Constitution. The trial court erred when it held otherwise.

Reversed and dismissed.