Cite as 2020 Ark. 3

# SUPREME COURT OF ARKANSAS

No. CV–18–826

| | |
|---|---|
| | **Opinion Delivered** January 9, 2020 |
| CHRISTOPHER H. HARRIS<br>APPELLANT | |
| V. | APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT<br>[NO. 60CV-18-2951] |
| ASA HUTCHINSON, INDIVIDUALLY<br>AND IN HIS OFFICIAL CAPACITY AS<br>GOVERNOR OF THE STATE OF<br>ARKANSAS; AND PATRICK FISK,<br>INDIVIDUALLY AND IN HIS<br>OFFICIAL CAPACITY | HONORABLE TIMOTHY DAVIS<br>FOX, JUDGE |
| APPELLEES | AFFIRMED IN PART, REVERSED IN<br>PART, AND REMANDED. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant Christopher H. Harris appeals the Pulaski County Circuit Court's order granting a motion to dismiss filed by appellees Arkansas Governor Asa Hutchinson and Arkansas Livestock and Poultry Commission Deputy Director Patrick Fisk. For reversal, Harris contends that the circuit court erred by granting the appellees' motion to dismiss on the basis of sovereign immunity and that the circuit court erred by granting the motion to dismiss pursuant to Arkansas Rule of Civil Procedure 12(b)(6). We affirm in part, reverse in part, and remand.

Harris alleged in his complaint that he worked for the Arkansas Livestock and Poultry Commission, which is a division of the Arkansas Department of Agriculture. Harris claimed

that in March 2018 he was asked to interview applicants for a field livestock–inspector position, and among those he interviewed was an unqualified candidate favored by Hutchinson. Harris eventually selected a different candidate, Morgan Keener, for the position. According to Harris, even though Keener was the most qualified, Fisk, at Hutchinson's direction, instructed him to hire the individual favored by Hutchinson. Harris asserted that he refused to violate the state's policy to hire the most qualified individual and that he was terminated the next day for insubordination. Bringing claims pursuant to the Arkansas Whistle-Blower Act (AWBA), Arkansas Code Annotated sections 21-1-601 et seq. (Repl. 2016 & Supp. 2017), as well as the state and federal constitutions, Harris sought damages against the appellees in their individual capacities only but also prayed for reinstatement and other injunctive relief.

The appellees filed a motion to dismiss on June 8, 2018, arguing that Harris's factual allegations failed to demonstrate a violation of any statutory or constitutional right, that they were entitled to sovereign immunity as to Harris's claims against them in their official capacities, that they were entitled to statutory immunity as to Harris's claims against them in their individual capacities, and that they were entitled to qualified immunity as to Harris's claims against them in both their individual and official capacities. The circuit court's July 23, 2018 order granted the appellees' motion to dismiss and dismissed all claims solely "on the basis of sovereign immunity." Harris filed a timely appeal.

In reviewing a circuit court's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff.

*Worden v. Kirchner*, 2013 Ark. 509, 431 S.W.3d 243. We look only to the allegations in the complaint and not to matters outside the complaint. *Ark. State Plant Bd. v. McCarty*, 2019 Ark. 214, 576 S.W.3d 473. We treat only the facts alleged in the complaint as true but not a plaintiff's theories, speculation, or statutory interpretation. *Id*. Whether a party is immune from suit is purely a question of law that we review de novo. *Milligan v. Singer*, 2019 Ark. 177, 574 S.W.3d 653.

Harris alleged that his termination violated the AWBA and his rights guaranteed by the state and federal constitutions. The AWBA protects public employees from retaliation based on the employee's good-faith reporting of the violation of a law, rule, or regulation, or the waste of public funds, to an appropriate authority. Ark. Code Ann. § 21-1-603. To establish a retaliation claim under the First Amendment to the United States Constitution, Harris must demonstrate that he engaged in protected activity and that this activity was a substantial or motivating factor in his termination. *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855 (8th Cir. 2009). Harris's "right to remonstrate" is found in article 2, section 4 of the Arkansas Constitution, which states that the right of the people "peaceably to assemble, to consult for the common good; and to petition, by address or remonstrance, the government, or any department thereof, shall never be abridged." Ark. Const. art. 2, § 4.

We initially consider the AWBA and constitutional claims brought against the appellees in their official capacities. Harris argues that the circuit court erred by dismissing his complaint on the basis of sovereign immunity. The Arkansas Constitution unequivocally provides that "[t]he State of Arkansas shall never be made defendant in any of her courts."

3

Ark. Const. art. 5, § 20. We extend this sovereign immunity to state employees sued in their official capacities. *Banks v. Jones*, 2019 Ark. 204, 575 S.W.3d 111. That is because a suit against a state official in his or her official capacity is not a suit against that person but rather is a suit against that official's office and is no different than a suit against the State itself. *Id.* If a judgment in favor of a plaintiff would operate to control the action of the State or subject it to liability, the suit is one against the State and is barred by the doctrine of sovereign immunity. *Ark. Tech. Univ. v. Link*, 341 Ark. 495, 17 S.W.3d 809 (2000). However, sovereign immunity is an affirmative defense that must be raised and ruled on at the circuit court level in order to preserve the issue. *Wilson v. Ark. Dep't of Human Servs.*, 2018 Ark. 358, 562 S.W.3d 201. Additionally, the defense of sovereign immunity is inapplicable in a lawsuit seeking only declaratory or injunctive relief and alleging an illegal, unconstitutional, or ultra vires act. *Martin v. Haas*, 2018 Ark. 283, 556 S.W.3d 509.

The General Assembly clearly intended to subject the State to liability under the AWBA. Ark. Code Ann. § 21-1-602(5); *Smith v. Daniel*, 2014 Ark. 519, at 6, 452 S.W.3d 575, 578–79 (When the General Assembly authorized a suit against a "public employer" it expressly waived sovereign immunity.). Nevertheless, we have held that the Arkansas Constitution prohibits legislative waivers of the State's sovereign immunity. *Bd. of Trs. of Univ. of Ark. v. Andrews*, 2018 Ark. 12, 535 S.W.3d 316. Although the issue in *Andrews* was the Arkansas Minimum Wage Act, we applied the *Andrews* rationale in holding that the AWBA's purported legislative waiver of sovereign immunity violates the Arkansas Constitution. *Ark. Cmty. Corr. v. Barnes*, 2018 Ark. 122, 542 S.W.3d 841.

On appeal, Harris presents multiple arguments in support of his position that sovereign immunity does not foreclose his official-capacity claims. Harris acknowledges this court's holdings in *Andrews* and *Barnes* but claims that those cases did not address arguments that either article 2 or article 6 trumps article 5, section 20 of our constitution. He additionally argues that the governor waived sovereign immunity for the executive branch by signing the AWBA. Finally, Harris asserts that the State of Arkansas is not a named defendant and that we should no longer follow *Andrews*.

Harris first argues that article 5, section 20 must yield to article 2. Article 2, section 13 of the Arkansas Constitution provides that "every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property, or character." Although *Andrews* and *Barnes* did not address Harris's contention that article 2 supersedes section 20 of article 5, we considered that very argument in an earlier case. *Bryant v. Ark. State Highway Comm'n*, 233 Ark. 41, 342 S.W.2d 415 (1961). In rejecting the assertion that the State's immunity from suit conflicted with other constitutional provisions, we stated,

> This argument must be rejected. The framers of the constitution certainly knew that instances of hardship would result from the prohibition of suits against the State, but they nevertheless elected to write that immunity into the constitution. The language is too plain to be misunderstood, and it is our duty to give effect to it. The appellants' argument, carried to its logical end, would completely destroy the State's immunity from suit, for it could be argued in every case that to exempt the State from a coercive proceeding would be to deny the plaintiff a certain remedy for an injury he had supposedly suffered.

*Id.* at 44, 342 S.W.2d at 417.

We reiterated the *Bryant* holding in *Milligan* and further noted that in recognition of the State's constitutional sovereign immunity, the legislature has established the Arkansas State Claims Commission so that claims against the State may be addressed while preserving the State's sovereign immunity. *Milligan*, 2019 Ark. 177, 574 S.W.3d 653. Harris's argument that article 2 trumps section 20 of article 5 is indistinguishable from the argument made in *Milligan*. Therefore, this point is without merit.

Harris next contends that article 6 governs the executive branch and addresses the passage or veto of bills. According to Harris, the governor's signature on the AWBA amounts to an executive waiver of the sovereign-immunity defense. However, in *Milligan*, we held that the governor's signature on the AWBA did not act as an executive waiver of the State's sovereign immunity because the governor does not enact legislation. We explained that the enactment of legislation is a legislative function and that the governor's signature "does not act as evidence of agreement with the legislation; it is instead a fulfillment of the duties of office under our system of checks and balances." *Milligan*, 2019 Ark. 177, at 4, 574 S.W.3d at 656. Harris's claim that the governor's signature waived sovereign immunity has been considered and rejected. Therefore, the governor did not waive sovereign immunity by signing the AWBA.

Harris also claims that sovereign immunity is inapplicable in this instance because the State was not named as a defendant. Although the State itself was not named as a defendant, Harris did name the appellees in their official capacities. As set forth above, an official-capacity claim against a State official is a suit against the State itself. *Banks*, 2019 Ark. 204,

575 S.W.3d 111. Although Harris did not seek damages against appellees in their official capacities, Harris's claims for injunctive relief are unquestionably legal claims against the State of Arkansas. *Id.*, 575 S.W.3d 111. Therefore, *Andrews* and other controlling authority of this court dictate that sovereign immunity bars Harris's claims against the appellees in their official capacities.

In a final bid to salvage his official-capacity claims, Harris urges this court to overturn *Andrews*. Harris asserts that *Andrews* is a "triple strike against the people of Arkansas" by (1) removing protections for whistleblowers, (2) undermining the Freedom of Information Act, and (3) removing the ability to obtain judicial review. We will not overrule precedent when presented with no compelling reason to do so. *See Nation v. Ayres*, 340 Ark. 270, 274, 9 S.W.3d 512, 514 (2000). The arguments that Harris advances here in favor of overturning *Andrews* are the exact same arguments raised in *Milligan* that we found to be without merit. Harris has offered no new or compelling argument that would cause us to believe that we should overturn our precedent. Thus, we decline to do so.

Having concluded that sovereign immunity bars Harris's official-capacity claims against the appellees, we must consider whether Harris pled facts to establish an illegal, unconstitutional, or ultra vires act such that sovereign immunity would not apply. A plaintiff seeking to surmount sovereign immunity under this exception is not exempt from complying with our fact-pleading requirements. *Banks*, 2019 Ark. 204, 575 S.W.3d 111. The complaint must provide facts to state a claim based on the alleged unconstitutional state action, and short conclusory statements and bare allegations will not do. *Id.*

Harris's complaint offers little more than conclusory allegations that he was terminated for reporting his concerns about misuse of state money due to the hiring of a candidate whom he considered to be less qualified. Harris's complaint alleged only that he selected a candidate, that Hutchinson directed Fisk to tell Harris to hire another candidate, and that when he refused, he was terminated for insubordination. Although Harris asserts that he reported his concerns about misuse of state money, he failed to indicate in the complaint when he made such a report. Harris failed to provide any detail of the interactions that he had with either appellee before his termination. Harris's conclusory statements and bare allegations are insufficient to establish an illegal, unconstitutional, or ultra vires act such that sovereign immunity would not apply to either his AWBA or his constitutional claims. Therefore, sovereign immunity precludes Harris's official-capacity claims.

Although sovereign immunity bars Harris's claims against the appellees in their official capacities, Harris also sued them in their individual capacities. The appellees argued that they were entitled to statutory and qualified immunity as to Harris's individual-capacity claims. The circuit court's order, however, relied on sovereign immunity to dismiss all the claims. In their individual capacities, the appellees do not enjoy the immunity granted to the State under article 5, section 20 of the Arkansas Constitution. *Banks*, 2019 Ark. 204, 575 S.W.3d 111. Accordingly, the circuit court erred when it found that sovereign immunity barred Harris's claims against the appellees in their individual capacities. We therefore reverse the dismissal of Harris's individual-capacity claims and remand for further proceedings.

Affirmed in part, reversed in part, and remanded.

BAKER and WYNNE, JJ., concur.

HART, WOOD, and WOMACK, JJ., concur in part and dissent in part.

**ROBIN F. WYNNE, Justice, concurring.** I agree with the majority's disposition of this case but write separately because I do not agree that sovereign immunity is an affirmative defense that must be raised and ruled on at the circuit court level in order to preserve the issue. In my view, sovereign immunity is a matter of subject–matter jurisdiction, not an affirmative defense that can be waived. *Wilson v. Ark. Dep't of Human Servs.*, 2018 Ark. 358, at 8–9, 562 S.W.3d 201, 205 (Wynne, J., dissenting); *Walther v. FLIS Enters., Inc.*, 2018 Ark. 64, at 14, 540 S.W.3d 264, 272 (Wynne, J., concurring). *See also Ark. Dep't of Veterans Affairs v. Mallett*, 2018 Ark. 217, 549 S.W.3d 351 (dismissing based on sovereign immunity despite the failure to raise the issue as an affirmative defense).

**JOSEPHINE LINKER HART, Justice, concurring in part and dissenting in part.** I agree with the majority's holding that sovereign immunity is no defense to Harris's claims against appellees in their individual capacities, and that to remand for further proceedings on those claims is appropriate. As to other holdings in the majority opinion, however, I dissent.

First, as to Harris's official-capacity claims, the majority suggests that this court already addressed Harris's argument that "article 5, section 20 must yield to article 2" almost half a century ago in a separate case, *Bryant v. Ark. State Highway Comm'n*, 233 Ark. 41, 342 S.W.2d 415 (1961). As I explained in *Milligan v. Singer*, 2019 Ark. 177, 574 S.W.3d 653

9

(Hart, J., dissenting), this is incorrect. *Bryant* only purported to address the relationship between article 5, section 20, and article 2, section 13; *Bryant* did not even mention the other provisions of article 2, including section 29, the provision with the language that would control the analysis of this issue. *See* Ark. Const. art. 2, § 29 ("[A]nd to guard against any encroachments on the rights herein retained, or any transgression of any of the higher powers herein delegated, we declare *that everything in this article is excepted out of the general powers of the government . . . .*") (emphasis added). As I noted in *Milligan*,

> Again, no provision similar to article 2, section 29 existed in the 1868 Arkansas Constitution. The *Andrews* majority hung its hat on the distinction between the 1868 version of article 5, section 45 and the 1874 version of article 5, section 20, the former of which expressly provided that the legislature could decide when to waive the State's sovereign immunity. *Andrews*, 2018 Ark. 12, at 10–11, 535 S.W.3d at 622. Acknowledging the new article 5, section 20 while simultaneously ignoring the new article 2, section 29 defied the intent of our founders.

2019 Ark. 177, at 9 n.6, 574 S.W.3d at 659 n.6. As in *Milligan*, the majority here continues to refuse to address how the *Andrews* interpretation of article 5, section 20 comports with article 2, section 29 of our state constitution. This court is affirming the circuit court's dismissal of Harris's official-capacity claims without addressing his strongest argument for reversal. Accordingly, I dissent from that portion of the majority opinion.

I also disagree with the majority's conclusion that Harris has failed to plead in his complaint an illegal, unconstitutional, or ultra vires act—an exception to the sovereign-immunity defense. Even after *Andrews*, sovereign immunity is not a defense to claims for declaratory or equitable relief from illegal, unconstitutional, or ultra vires conduct. *See*

10

*Martin v. Haas*, 2018 Ark. 283, at 8, 556 S.W.3d 509, 515 ("Because appellee has asserted that Act 633 violates qualified voters' constitutional right to vote and seeks declaratory and injunctive relief, not money damages, this action is not subject to the asserted sovereign–immunity defense."). In reviewing a circuit court's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Worden v. Kirchner*, 2013 Ark. 509, 431 S.W.3d 243. Harris's complaint alleges:

> At all times relevant, Plaintiff performed his job satisfactorily. In March of 2018, Plaintiff was asked to interview applicants for field livestock inspector position. Mr. Fisk instructed the Plaintiff to interview a candidate favored by the Governor, even though the Governor's favorite was unqualified. Plaintiff selected Morgan Keener. Mr. Keener was the most qualified candidate. At the Governor's direction, Mr. Fisk then told Plaintiff he must hire the individual favored by the Governor. Plaintiff, as a taxpayer and an employee, refused. State policy requires the State to hire the most qualified candidate. Defendants then fired Plaintiff for insubordination the next business [day], after he refused to violate state law and waste state money.
>
> . . . .
>
> Plaintiff reported his concerns about misuse of public money, violation of hiring laws, and harassment to Mr. Fisk, who each was an appropriate authority. Waste of public money is an issue of public concern. Hiring lesser qualified persons because of political patronage is a waste of money and a violation of the law. Defendants terminated the Plaintiff because he refused to violate the law or waste state money.

*See* Comp. 1–3 (paragraph numbering omitted).

Accepting these allegations as true and viewing them in the light most favorable to the plaintiff, which we must at this stage, Harris's complaint alleges an illegal, unconstitutional, or ultra vires act: insisting that Harris hire an unqualified applicant for public employment over a qualified applicant for reasons of political favoritism, and then

11

firing Harris for his refusal to do so. The majority characterizes these allegations as bare and conclusory, but what more should Harris have to plead to properly allege an illegal act here? Harris's official-capacity claims allege illegal conduct and seek relief only in the form of reversing, enjoining, and deterring that illegal conduct—not money damages. Accordingly, I dissent from that portion of the majority opinion as well.

In short, sovereign immunity should not be a viable defense to Harris's official-capacity claims of ultra vires activity.

Concurring in part; dissenting in part.

**SHAWN A. WOMACK, Justice, concurring in part and dissenting in part.** I agree with the majority's conclusion that sovereign immunity precludes Harris's official-capacity claims. However, I believe it is unnecessary to remand Harris's individual-capacity claims for further proceedings. Our rules require fact pleading; a complaint must state facts, not mere conclusions, to entitle a pleader to relief. *Ark. Tech Univ. v. Link*, 341 Ark. 495, 17 S.W.3d 809 (2000). As the majority notes, Harris's complaint contains little more than conclusory allegations that he was instructed to hire a candidate whom he viewed as less qualified than the candidate he preferred. Harris fails to allege any facts upon which relief could be granted against Appellees in either their official or individual capacities. While the circuit court may have incorrectly relied upon sovereign immunity to dismiss all claims, the correct result was reached. When the circuit court announces the wrong reason for its ruling, this court will still sustain the judgment if the result is right. *Stokes v. State*, 375 Ark.

394, 291 S.W.3d 155 (2009). Accordingly, I would affirm the circuit court's dismissal in its entirety.

WOOD, J., joins in this dissent.


*Sutter & Gillham, P.L.L.C.*, by: *Luther Oneal Sutter* and *Lucien Gillham*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Maryna Jackson*, Ass't Att'y Gen., for appellee.