Cite as 2020 Ark. 17

# SUPREME COURT OF ARKANSAS

No. CV–18–721

| | |
|---|---|
| DEXTER HARMON<br><div align="right">APPELLANT</div><br>V.<br><br>OFFICER DEXTER PAYNE, ASSISTANT DIRECTOR, ARKANSAS DEPARTMENT OF CORRECTION; OFFICER JAMES GIBSON, WARDEN, VARNER UNIT; OFFICER JAMES SHIPMAN, DEPUTY WARDEN, VARNER UNIT; OFFICER YOLANDA CLARK, FOOD SERVICE DEPARTMENT; OFFICER LAQUISTA SWOPES, CORRECTIONAL OFFICER<br><br><div align="right">APPELLEES</div> | **Opinion Delivered:** January 16, 2020<br><br>PRO SE APPEAL FROM THE LINCOLN COUNTY CIRCUIT COURT [NO. 40CV–18–58]<br><br>HONORABLE JODI RAINES DENNIS, JUDGE<br><br><br>AFFIRMED IN PART; REVERSED IN PART. |

**SHAWN A. WOMACK, Associate Justice**

Dexter Harmon sued Arkansas prison officials under the Arkansas Civil Rights Act and state tort law for allegedly depriving him of a nutritionally adequate diet that is safe for consumption. He filed suit against Appellees in their official and individual capacities. The circuit court concluded that Harmon's complaint was barred by sovereign and statutory immunity and failed to state facts upon which relief could be granted. The court dismissed the action and issued a strike. We affirm the dismissal but reverse the strike.

During the relevant time period, Harmon was incarcerated at the Varner Supermax Unit of the Arkansas Department of Correction (ADC). In his pro se complaint, Harmon alleged that Appellees failed to comply with an ADC administrative regulation and unit policy concerning the food service at Varner Supermax. He sought to hold Appellees liable for negligence and for cruel and unusual punishment under the Arkansas Civil Rights Act. He requested injunctive and declaratory relief and reimbursement of costs.

According to the complaint, Appellees consistently served small portions of cold and unappetizing food. Harmon claimed he was provided nutritionally inadequate, poorly seasoned, and "regularly unappealing" food that "tastes nasty." He also alleged that meals were delivered by unqualified prison employees who had not been trained in food service. He stated that employees did not wash their hands, had poor personal hygiene, appeared sick, and wore their regular uniforms while handling food. Harmon further complained that the food was not kept at acceptable temperatures. He accused Appellees of being deliberately indifferent to these concerns by refusing to thoroughly investigate his grievances and refusing to properly oversee food distribution. As a result, Harmon alleged that he was afraid to eat the food because he believed it was contaminated and placed him at risk of contracting a foodborne illness. According to Harmon, he consequently suffered emotional harm, weight loss, energy loss, and fatigue.

The circuit court granted Appellees' motion to dismiss. The court concluded that the complaint was barred by sovereign and statutory immunity and failed to state facts upon

which relief could be granted.[1] The court also issued a strike under Arkansas Code Annotated section 16-68-607 (Supp. 2017). This appeal followed.

II.

On appeal, Harmon contends that his complaint provided sufficient factual allegations to establish an exception to sovereign immunity, preclude application of statutory immunity, and satisfy our fact-pleading requirement. According to Harmon, his complaint provided factual allegations showing that Appellees' conduct violated the state constitution's prohibition against cruel and unusual punishment under the Arkansas Civil Rights Act and constituted negligence under state tort law. He asks that we reverse the dismissal of his complaint and the circuit court's issuance of a strike.

When reviewing the circuit court's decision to grant a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *See Banks v. Jones*, 2019 Ark. 204, at 3, 575 S.W.3d 111, 114. All reasonable inferences are resolved in favor of the complaint, and the pleadings are liberally construed. *Id*. Under our fact-pleading requirement, a complaint must state facts in order to entitle the pleader to relief. *Id*. Mere conclusions will not suffice. *Id*. We review a motion to dismiss for abuse of discretion. *Id*. But whether a party is immune from suit is purely a question of law and is reviewed de novo. *Id*.

---

[1]The court also held that Harmon's federal claims were barred by qualified immunity. But there were no federal claims in the complaint.

A.

The Arkansas Constitution unequivocally provides that "[t]he State of Arkansas shall never be made defendant in any of her courts." Ark. Const. art. 5, § 20. We have extended sovereign immunity to state agencies and employees sued in their official capacities. *See Williams v. McCoy*, 2018 Ark. 17, at 3, 535 S.W.3d 266, 268. Sovereign immunity accordingly extends to claims against Appellees in their official capacities as ADC employees. *See Fegans v. Norris*, 351 Ark. 200, 206–07, 89 S.W.3d 919, 924 (2002) (per curiam). In determining whether the doctrine of sovereign immunity applies, the court must decide whether a judgment for the plaintiff will operate to control the action of the State or subject it to liability. *See Ark. Tech Univ. v. Link*, 341 Ark. 495, 502, 17 S.W.3d 809, 813 (2000). If so, the action will be treated as one against the State. *Id.*

Harmon does not challenge the extension of sovereign immunity to the official-capacity claims against Appellees. Rather, he contends that an exception to sovereign immunity applies. According to Harmon, Appellees are not entitled to sovereign immunity because they acted illegally and unconstitutionally and refused to do purely ministerial actions. To be sure, these are among the previously recognized exceptions to the doctrine of sovereign immunity. *See Williams*, 2018 Ark. 17, at 3, 535 S.W.3d at 268. However, a complaint alleging an exception to sovereign immunity is not exempt from our fact pleading requirements. *Id.* The complaint must plead sufficient facts establishing an unconstitutional or unlawful act that would avoid application of sovereign immunity. *Id.*

State officials and employees are not afforded constitutional sovereign immunity in their individual capacities. *See Grine v. Bd. of Trs.*, 338 Ark. 791, 799, 2 S.W.3d 54, 59

4

(1999).  They are, however, entitled to statutory immunity from civil liability and from suit for nonmalicious acts made within the course and scope of their employment.  *See id.*; Ark. Code Ann. § 19-10-305(a) (Repl. 2016).  When determining whether state employees and officials are entitled to statutory immunity, we have traditionally been guided by the standard used for qualified-immunity claims in federal civil rights actions.  *See Ark. State Med. Bd. v. Byers*, 2017 Ark. 213, at 5, 521 S.W.3d 459, 463.  Under that standard, Appellees are entitled to statutory immunity unless they transgress "clearly established statutory or constitutional rights of which a reasonable person would have known."  *See Rainey v. Hartness*, 339 Ark. 293, 299, 5 S.W.3d 410, 415 (1999) (internal quotation marks and citation omitted).  Additionally, the complaint must sufficiently allege that Appellees acted with malicious intent outside the scope of their employment.  *See Fuqua v. Flowers*, 341 Ark. 901, 905–06, 20 S.W.3d 388, 391 (2000).

B.

The Arkansas Civil Rights Act imposes liability when state officials acting under the color of state law deprive persons of their rights under the Arkansas Constitution.  *See* Ark. Code Ann. § 16-123-105 (Repl. 2016).  In construing the Act, we may be guided by state and federal decisions interpreting the federal Civil Rights Act, 42 U.S.C. § 1983.  *See Gentry v. Robinson*, 2009 Ark. 634, at 7, 361 S.W.3d 788, 793.  Cruel and unusual punishment as prohibited by article 2, section 9 of the Arkansas Constitution is likewise prohibited under the Eighth Amendment to the United States Constitution. *See Kelley v. Johnson*, 2016 Ark. 268, at 13–14, 496 S.W.3d 346, 356–57.  We have traditionally interpreted article 2, section 9 in a manner consistent with federal Eighth Amendment jurisprudence.  *Id.*

Harmon was required to allege that the constitutional violation arose as a result of the deliberate indifference to a clearly established constitutional right by prison officials. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). The alleged deprivation must be "sufficiently serious" and "pose a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Courts evaluating a claim of immunity must first determine if the facts alleged demonstrated the deprivation of an actual constitutional right. *See Early v. Crockett*, 2014 Ark. 278, at 10, 436 S.W.3d 141, 148.

We have not previously considered the constitutional protections offered to inmates with respect to prison diets. But this issue is well-ploughed in the federal courts. Indeed, the Eighth Circuit has long recognized that inmates have a right to a nutritionally adequate diet. *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). Food must be prepared and served under conditions that do not present an immediate danger to the inmate's health and well-being. *See French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (citing *Ramos v. Lamm*, 639 F.2d 559, 570–71 (10th Cir. 1980)). That said, food need not be tasty or aesthetically pleasing. *See Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977). That food occasionally contains foreign objects or is sometimes served cold, while unpleasant, does not amount to a constitutional deprivation. *See Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). A well-balanced meal containing sufficient nutritional value to preserve health is all that is required. *See LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993); *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977).

Taking the facts alleged in Harmon's complaint as true, Harmon failed to allege that the prison food service presented an immediate danger to his health. Indeed, Harmon

6

offered nothing more than the conclusory assertion that the food provided was nutritionally inadequate. Even assuming that Harmon was served cold and unappetizing food, that does not give rise to a constitutional claim. Moreover, Harmon's claim that the food portions were "small" failed to explain how those portions fell below acceptable levels of calories necessary to maintain his health and well-being. He failed to specify how the food lacked basic nutritional value. His claim that he had lost weight was likewise vague and conclusory.

Harmon's assertions that the food was unsanitary and contaminated were based on allegations that the prison employees who deliver the meals did not wash their hands, appeared sick, and wore their regular uniforms during food service. Harmon made no allegations regarding the sanitary conditions of the kitchen or the hygiene habits of the personnel who are responsible for the food preparation itself. Further, Harmon did not explain how the means of delivering the meals or the temperature of the food at the time of delivery posed a substantial risk of foodborne illnesses. Moreover, under the standards set forth by the federal courts, there is no constitutional requirement that food be delivered by personnel who are experienced in food service or who have been medically screened.

The basic component in stating a viable claim is that prison food is not adequately nutritious to preserve an inmate's health. Harmon made only conclusory allegations in this regard. Accordingly, Harmon failed to allege sufficient facts demonstrating a serious deprivation of his right to nutritious food that poses a substantial risk to his health. Because the allegations failed to establish a constitutional violation, he failed to surmount sovereign and statutory immunity. Harmon's constitutional claims are therefore barred.

The negligence claims are based on the same underlying factual allegations of his constitutional claim. Harmon alleged that ADC regulations regarding food service imposed a duty of care that Appellees negligently failed to follow. As illustrated above, Harmon offered nothing more than conclusory allegations to support his claims. Under our fact-pleading requirement, these allegations fail to establish an exception to sovereign immunity for the negligence claims. *See Link*, 341 Ark. at 503, 17 S.W.3d at 814. Moreover, the complaint includes no specific factual allegations that Appellees personally acted with malice. *See Byers*, 2017 Ark. 213, at 8, 521 S.W.3d at 465. The claims against Appellees in their individual capacities are therefore barred by statutory immunity.

In sum, the circuit court did not abuse its discretion in dismissing Harmon's complaint. The factual allegations within the complaint failed to establish an exception to sovereign immunity and avoid statutory immunity. We accordingly affirm the dismissal of the complaint and need not reach the other arguments regarding that order.

As a final point, we must address the circuit court's imposition of a strike for the dismissal of the underlying action. *See* Ark. Code Ann. § 16-68-607 (Supp. 2017). A strike is warranted when an incarcerated plaintiff brings an action that is frivolous, malicious, or failed to state a claim on which relief may be granted. *Id.* The circuit court imposed a strike on the basis that Harmon failed to state a claim. As noted above, the underlying complaint set out a claim but failed to provide sufficient facts supporting a constitutional violation as required by our fact-pleading rules. Indeed, the circuit court implicitly agreed that Harmon stated a colorable cause of action by granting his application to proceed in forma pauperis. *See* Ark. R. Civ. P. 72 (2017) (pauper status granted only upon showing

8

of indigency and court's satisfaction that alleged facts indicate a "colorable cause of action"); *see also Morgan v. Kelley*, 2019 Ark. 189, at 5, 575 S.W.3d 108, 111. The strike was accordingly unwarranted and is reversed.

Affirmed in part; reversed in part.

BAKER, J., concurs without opinion.

HART, J., concurs in part; dissents in part.

**JOSEPHINE LINKER HART, Justice, concurring in part and dissenting in part.**
I agree that the circuit court properly dismissed the official capacity civil rights claims concerning the deficiencies in the handling of inmate food at the Varner Unit of the Arkansas Department of Correction. As alleged by Mr. Harmon, these practices do not rise to the level of cruel and unusual punishment. However, Mr. Harmon has sufficiently pled negligent-supervision claims against Dexter Payne, James Gibson, James Shipman, Yolanda Clark, and Laquista Swopes as well as their lack of entitlement to statutory immunity. I would therefore reverse and remand this case for further proceedings on the tort claims.

When reviewing a circuit court's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Biedenharn v. Thicksten*, 361 Ark. 438, 206 S.W.3d 837 (2005). Furthermore, we liberally construe the facts in plaintiff's favor. *Id.* The majority has failed to follow our standard of review.

It is telling that the majority disposes of Mr. Harmon's tort claims in a single paragraph. Contrary to the cursory treatment that the majority affords Mr. Harmon's tort claims, these claims are substantial and sufficiently pled to at least survive a motion to dismiss.

9

Mr. Harmon painstakingly sets out in 36 paragraphs in his complaint the facts constituting his tort claims. These 36 paragraphs are in addition to the 40 prior paragraphs devoted to his civil rights claims. Importantly, Mr. Harmon incorporates by reference these 40 paragraphs of factual allegations. Contrary to the majority's assertion, these 40 paragraphs only serve to add further factual support to his second cause of action, which sounds in tort. While both his civil rights claim and his tort claims concern the prison's handling of his food, Mr. Harmon has carefully laid out the different elements for the respective causes of action.

In his pleading, Mr. Harmon states the duty of care required by the Department of Correction's administrative rules and regulations. He cites the exact requirements imposed by these regulations regarding the proper training, clothing, equipping, and supervision of prison personnel and prisoners involved with food service. He also documents the specific violations of these regulations by specific examples. As required by any tort case, he establishes the duty owed, the breach of that duty, and damages. Further, viewing the facts alleged in the complaint in the light most favorable to Mr. Harmon, as we must, Mr. Harmon establishes malice by the length of time that these violations were allowed to continue, as well as the fact that he availed himself of the prison grievance system without receiving relief. Viewed in the light most favorable to Mr. Harmon, these facts establish willful indifference on the part of the named Department of Correction employees. Accordingly, it is simply not correct when the majority states that disposing of the civil rights claim likewise disposes of the tort claim. This case should be reversed and remanded so that Mr. Harmon can pursue his tort claim.

I concur in part and dissent in part.

*Dexter Harmon*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by:  *Rosalyn Middleton*, Ass't Att'y Gen., for appellee.