Cite as 2026 Ark. 57
# SUPREME COURT OF ARKANSAS
No. CV–25–396

ARKANSAS HIGHWAY POLICE, A DIVISION OF THE ARKANSAS STATE HIGHWAY AND TRANSPORTATION DEPARTMENT
APPELLANT

V.

RAUNONA MAYS
APPELLEE

Opinion Delivered April 9, 2026

APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-24-1957]

HONORABLE CARA CONNORS, JUDGE

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

**RHONDA K. WOOD, Associate Justice**

Officer Raunona Mays filed a complaint against her employer, the Arkansas Highway Police (AHP),[1] alleging that she was denied four promotions because of her race and gender in violation of section 1983, section 1981, Title VII, and the Arkansas Civil Rights Act (ACRA). AHP moved to dismiss based on sovereign immunity and the circuit court denied it. AHP appeals and we reverse and remand Mays's section 1983, section 1981, and ACRA claims because those claims must be brought against a person, not an agency, and thus do not survive sovereign immunity. Because Mays pleaded sufficient facts in support of her Title VII claim to survive the sovereign-immunity challenge, we affirm as to it.

---

[1]The Arkansas Highway Police is a division within the Arkansas State Highway and Transportation Department.

## I. *Facts*

Raunona Mays is an African American woman who has been employed with AHP since 2004. She holds the position of Sergeant and has applied for and been denied four positions between 2022 and 2023. Mays contends that AHP filled all four positions with either Caucasian males or inferior candidates. Mays alleges she was fully qualified and met the requirements for each position. Below summarizes the facts Mays alleges to support her discrimination and retaliation claims.

First, Mays applied for but did not receive a promotion to First Lieutenant. Instead, Doug Lafferty, a Caucasian male, was promoted, even though he had six years' less seniority than Mays and a bachelor's degree in art history (Mays has a degree in criminal justice). Moreover, Lafferty had been sanctioned for failing to document verbal discipline he had given to another officer. Mays filed a grievance with AHP naming Nancy Harmon and Captain Pete Lopez, members of the promotion-decision panel. She did not receive relief from her grievance.

Next, Mays applied for a promotion to Second Lieutenant. Sergeant Chad Heath received the promotion. Heath is a Caucasian male who had no more time in service and no higher academic degree than Mays. Then, Mays applied for a promotion to the Patrol Lieutenant position. Again, now Lieutenant Heath received this promotion. Finally, Mays applied for a Station Lieutenant position. This time, Sergeant Winfrey, who had less service time and education than Mays, received the promotion. Harmon and Lopez were on each promotion-decision panel.

Failing to receive these four promotions, Mays filed an Equal Employment Opportunity Commission (EEOC) complaint. Mays alleged race and sex discrimination. She claims AHP retaliated after she filed her first grievance. The EEOC dismissed the charge and gave Mays a right to sue. Thus, Mays sued AHP for race discrimination, sex discrimination, and retaliation in violation of Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Arkansas Civil Rights Act. Mays seeks money damages, a Lieutenant position, and an injunction against future employment discrimination. AHP moved to dismiss on sovereign-immunity grounds. The circuit court denied the motion to dismiss, and AHP filed this interlocutory appeal.

## II. *Standard of Review*

AHP can file an interlocutory appeal for the denial of the motion to dismiss based on sovereign immunity. Ark. R. of App. Proc. Civil 2(a)(10). A party's entitlement to dismissal as a matter of law on sovereign-immunity grounds is a legal question that we review de novo. *Banks v. Jones*, 2019 Ark. 204, at 3, 575 S.W.3d 111, 114.

As the plaintiff alleges an exception to sovereign immunity based on the State's commission of an illegal, unconstitutional, or ultra vires act, we must review the pleadings to determine whether the plaintiff has alleged sufficient facts for that claim to survive a motion to dismiss. Thus, we review the factual analysis of the denial of a motion to dismiss for abuse of discretion. *Williams v. McCoy*, 2018 Ark. 17, at 2–3, 535 S.W.3d 266, 268. We treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Id.* We also resolve all reasonable inferences in favor of the complaint and construe the pleadings liberally. *Id.* Because our rules require fact

3

pleading, the complaint must state facts, not mere conclusions, to surmount sovereign immunity. *Id.*

### III. *Analysis*
### A. Sovereign Immunity

The State's sovereign immunity originates in article 5, section 20 of the Arkansas Constitution, which provides that "[t]he State of Arkansas shall never be made defendant in any of her courts." A suit against the State is barred by sovereign immunity if a judgment for the plaintiff will control the State's action or subject the State to liability. *See Ark. Dep't of Envtl. Qual. v. Al–Madhoun*, 374 Ark. 28, 285 S.W.3d 654 (2008). Yet sovereign immunity does not apply if a state agency, or an officer, acts in a manner that is illegal, unconstitutional, or ultra vires. *Martin v. Haas*, 2018 Ark. 283, at 7, 556 S.W.3d 509, 514. A plaintiff seeking to overcome sovereign immunity must provide sufficient facts in the complaint to state a claim based on the alleged illegal, unconstitutional, or ultra vires state action. *Banks*, 2019 Ark. 204, at 4. "Courts evaluating a claim of immunity must first determine if the facts alleged demonstrated the deprivation of an actual constitutional right." *Harmon v. Payne*, 2020 Ark. 17, at 6, 592 S.W.3d 619, 623.

### B. Federal Claims: U.S.C. § 1983 and § 1981

Officer Mays sued AHP, alleging race and sex discrimination in her employment and retaliation for reporting that race and sex discrimination. To survive AHP's sovereign-immunity defense, Mays must plead sufficient facts to state a claim based on race discrimination, sex discrimination, or retaliation in her employment.

4

Mays named AHP as the only defendant and did not sue any individual officers in their individual capacities. The decision to sue only the state agency and not any individual officers is fatal to a few of her claims. Mays alleged civil rights violations under 42 U.S.C. § 1983, but it applies to claims against a person (individual officers acting in their individual capacities), not state agencies.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. A state agency is not a person under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). Therefore, her claim against AHP under § 1983 fails.

Nor does Mays state a claim against AHP for § 1981 violations. The Eleventh Amendment immunizes states from suit in federal court unless Congress has abrogated such immunity. Congress has not done so for § 1981 claims. *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 890 (8th Cir. 2005) ("[A] state is immunized from § 1981 liability under the Eleventh Amendment."). States have even greater sovereign immunity in state courts than they do in federal courts.[2] Given that the state agency would enjoy immunity from suit in

---

[2]In *Alden v. Maine*, the U.S. Supreme Court noted that

> [A] congressional power to authorize private suits against nonconsenting States in their own courts would be even more offensive to state sovereignty than a power to authorize the suits in a federal forum. Although the immunity

5

federal court on the § 1981 claim, the claim cannot survive a sovereign-immunity challenge in state court.

We have required plaintiffs to allege facts sufficient to meet their claims to overcome sovereign immunity. *See, e.g.*, *Rutledge v. Remmel*, 2022 Ark. 86, at 5, 643 S.W.3d 5, 8 (stating the complaint must allege facts surmounting sovereign immunity); *Ark. Dep't of Fin. & Admin. v. Lewis*, 2021 Ark 213, 633 S.W.3d 767 ("The complaint must provide sufficient facts which indicate that the State is acting in a manner that entitles the pleader to one or more of the sovereign-immunity exceptions."); *Banks*, 2019 Ark. 204, 575 S.W3d 111 ("A plaintiff seeking to surmount sovereign immunity under [the] exception . . . must provide facts sufficient to state a claim based on the alleged unconstitutional state action."); *Ark. Tech Univ. v. Link*, 341 Ark. 495, 17 S.W.3d 809 (2000) (holding that the exception to sovereign immunity did not apply because plaintiffs failed to plead sufficient facts to state a claim based on the unconstitutional impairment or deprivation of a vested property right). Mays failed to sufficiently plead claims under § 1983 or § 1981 to overcome the state's sovereign-immunity defense. Thus, AHP is entitled to sovereign immunity on these claims. We reverse the circuit court's decision to allow Mays to proceed on her § 1981 and § 1983 claims and remand for their dismissal.

---

of one sovereign in the courts of another has often depended in part on comity or agreement, the immunity of a sovereign in its own courts has always been understood to be within the sole control of the sovereign itself.

527 U.S. 706, 749 (1999). Furthermore, the Court "reject[ed] any contention that substantive federal law by its own force necessarily overrides the sovereign immunity of the States." *Id*. at 732.

## C. Arkansas Civil Rights Act Claims

Mays also alleges Arkansas Civil Rights Act (ACRA) violations in her complaint. But like § 1983 claims, claims under the ACRA are limited to suits against persons[3] acting under color of state law:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured in an action in circuit court for legal and equitable relief or other proper redress.

Ark. Code Ann. § 16-123-105 (Repl. 2016) (emphasis added). Per the statute and our precedent, we look to decisions interpreting 42 U.S.C. § 1983 to construe the ACRA. "When construing this section, a court may look for guidance to state and federal decisions interpreting the Civil Rights Act of 1871, as amended and codified in 42 U.S.C. § 1983. . . ." Ark. Code Ann. § 16-123-105(c); *see also Harmon v. Payne*, 2020 Ark. 17, at 5, 592 S.W.3d 619, 623. Just as state and federal courts interpret "person" in 42 U.S.C. § 1983 to exclude state agencies, we also find a state agency is not a person under the ACRA. Thus, Mays has not sufficiently pleaded a claim under the ACRA to overcome sovereign immunity. The circuit court erred by denying AHP's motion to dismiss on sovereign-immunity grounds. We reverse the circuit court's decision denying AHP's motion to dismiss on Mays's ACRA claims, and we remand for its dismissal.[4]

---

[3]Suits against individual officers in their official capacities are considered suits against the state. *Steinbuch v. Univ. of Ark.*, 2019 Ark. 356, at 12, 589 S.W.3d 350, 358.

[4]Because Mays failed to plead facts to overcome sovereign immunity, we do not get to the next step and decide whether sovereign immunity would prohibit all ACRA claims.

D. Title VII Employment-Discrimination Claims

Unlike the above claims, an employment-discrimination claim under Title VII of the Civil Rights Act of 1964 may proceed against a state agency. 42 U.S.C. § 2000e. A "person" is defined to include "governmental agencies," and it refers to discriminatory employment action by "employers." 42 U.S.C. § 2000e-2. Mays's complaint has alleged facts that, if taken as true and in the light most favorable to her, support her Title VII violation claims. She alleges that her employer, AHP, discriminated against her based on her race and/or gender by offering promotions to several Caucasian male candidates who were less qualified. When there is no direct evidence of discrimination, a Title VII claim follows the framework first set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See also Banks*, 2019 Ark. 204, at 6–7.

To state a claim for race or sex discrimination in the hiring (or promotions) context, a plaintiff must first make a prima facie case that shows (1) she is in a protected class; (2) she was qualified for an open position; (3) she was denied that position; and (4) the employer filled the position with a person not in the same protected class. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011); *see also Banks*, 2019 Ark. 204, at 6–7.

In her complaint, Mays alleges specific facts that establish a prima facie case of discriminatory employment. She states that she is an African American female; that she was qualified and applied for open positions; that she did not receive the positions; and that they were awarded to applicants not in her protected class. This is sufficient.

AHP is not entitled to sovereign immunity from suit on Mays's Title VII claim. We find the circuit court did not err in denying AHP's motion to dismiss on sovereign

immunity. Therefore, we affirm on this point and allow Mays to proceed on her Title VII claim.

Summarizing, we reverse and remand for dismissal of Mays's claims under § 1983, § 1981, and ACRA. We affirm the court's denial of AHP's sovereign-immunity defense under Title VII.

Affirmed in part; reversed and remanded in part.

BAKER, C.J., and WOMACK, J., concur in part and dissent in part.


**KAREN R. BAKER, Chief Justice, concurring in part and dissenting in part.**
While I agree with the majority's decision to reverse the circuit court's denial of AHP's motion to dismiss Mays's Arkansas Civil Rights Act claims, I write separately for the reasons stated in my dissent in *Board of Trustees of the University of Arkansas v. Andrews*, 2018 Ark. 12, at 13, 535 S.W.3d 616, 624, and its progeny. In *Andrews*, the court held,

> [W]e interpret the constitutional provision, "The State of Arkansas shall never be made a defendant in any of her courts," precisely as it reads. The drafters of our current constitution removed language from the 1868 constitution that provided the General Assembly with statutory authority to waive sovereign immunity and instead used the word "never." *See* Ark. Const. of 1868, art. 5, § 45; Ark. Const. art. 5, § 20. The people of the state of Arkansas approved this change when ratifying the current constitution.

2018 Ark. 12, at 10–11, 535 S.W.3d at 622.

Stated differently, the court held that "never means never," and it did not identify exceptions, exemptions or the like. *See Ark. Oil & Gas Comm'n v. Hurd*, 2018 Ark. 397, at 18, 564 S.W.3d 248, 258 (Baker, J., dissenting); *see also Land v. BAS, LLC*, 2025 Ark. 107, at 16, 713 S.W.3d 1, 12 (Baker, C.J., concurring and dissenting). Despite Mays's assertion

9

that her discrimination and retaliation claims fall within the court's ultra vires exception to sovereign immunity, the broad language in *Andrews* did not contemplate exceptions. Thus, because *Andrews* has not been overruled, Mays's state claims against AHP are barred.

With respect to Mays's section 1983, section 1981, and Title VII claims, I would affirm the circuit court's decision because AHP is not entitled to sovereign immunity from those claims. Our jurisdiction over this interlocutory appeal is limited to the narrow question of whether AHP is entitled to sovereign immunity. *See* Ark. R. of App. Pr. –Civ. 2(a)(10). In other words, we are tasked with determining only whether AHP is immune from suit. Unlike its effect on state claims, article 5, section 20 of the Arkansas Constitution cannot serve as a bar to federal claims. Thus, AHP is not entitled to sovereign immunity with respect to Mays's federal claims, and at this stage of the litigation, those claims should be permitted to move forward. It is for the parties to raise, and for the circuit court to resolve, any other issues regarding the viability of Mays's claims that do not fall within the scope of this interlocutory appeal.

Accordingly, I concur in part and dissent in part.

**SHAWN A. WOMACK, Justice, concurring in part and dissenting in part.** This interlocutory appeal presents a narrow question: whether the Arkansas Highway Police (AHP) is entitled to sovereign immunity from Mays's state and federal claims pursuant to article 5, section 20 of the Arkansas Constitution?

That provision reads that, "[t]he State of Arkansas shall never be made defendant in any of her courts." Under a proper reading of this text, suits against the State are barred

10

absent an express constitutional provision to the contrary.[1]  Some express exceptions to this general rule include illegal exaction claims under article 16, section 13; sufficiency challenges under article 5, section 1; habeas relief under article 2, section 11; and takings claims under article 2, section 22.  In this case, Mays's Arkansas Civil Rights Act claims (her state law claims) do not fall under an express exception; thus, I agree with the majority that those claims should be dismissed.

The federal claims stand on different footing.  With respect to Mays's claims under 42 U.S.C. §§ 1983 and 1981 and Title VII, I would affirm the circuit court's decision because the Arkansas Highway Police (AHP) is not entitled to sovereign immunity from those federal claims at this stage.

In *Alden v. Maine*, the Supreme Court of the United States decided as an issue of first impression: whether Congress had the authority under Article 1 to abrogate a state's immunity in its own courts.[2]  The Court held as a general rule that states retain sovereign immunity from private suits unless either: (1) the state consents or (2) Congress validly abrogates that immunity.[3]  That immunity applies in both federal and state courts.[4]  But *Alden* cannot be stretched so far as to permit a state to deploy sovereign immunity as a device to nullify federal causes of action in its courts.  Indeed, the Supremacy Clause imposes an

---

[1]*See Thurston v. League of Women Voters of Ark.*, 2022 Ark. 32, at 17, 639 S.W.3d 319, 327 (Womack, J., dissenting).  *See also* Ark. const. article 2, section 11; article 2, section 22; article 5, section 1; and article 16, section 13.

[2]*Alden v. Maine*, 527 U.S. 706, 707 (1999).

[3]*Id.* at 712–13.

[4]*Id.* at 709.

independent constraint: state courts of general jurisdiction must entertain federal claims on the same terms as analogous state claims and may not apply state law in a manner that undermines federal rights.[5] The Supreme Court made this point explicit in *Haywood v. Drown*, 556 U.S. 729 (2009). There, the State attempted to recast a policy choice—shielding a class of defendants from § 1983 liability—as a jurisdictional limitation. The Court rejected that maneuver, holding that a state may not "nullify a federal right or cause of action it believes is inconsistent with its local policies," nor may it invoke "jurisdiction" as a "trump" to close its courts to federal claims.[6]

The issue here is not with the text of article 5, section 20, but with how it operates in practice under its proper reading (i.e., how it categorically bars federal claims). As mentioned above, certain claims may proceed against the State when the Arkansas Constitution itself authorizes suit. In those contexts, the State is made a defendant notwithstanding article 5, section 20.[7] That feature of our law is critical. It demonstrates that article 5, section 20 does not operate as a uniform, across-the-board limitation. Instead, it establishes a selective regime of amenability: the State may be sued for some state claims, but not other similar federal claims. Under *Haywood*, that selectivity (i.e., a categorical ban of federal claims) produces a constitutionally problematic asymmetry. Claims grounded in

---

[5] *Testa v. Katt*, 330 U.S. 386 (1947); *Howlett v. Rose*, 496 U.S. 356 (1990).

[6] *Haywood* 556 U.S. at 736–37, 739–40.

[7] *See, e.g.*, illegal-exaction claims under article 16, section 13; sufficiency challenges under article 5, section 1; habeas relief under article 2, section 11; and takings claims under article 2, section 22.

the Arkansas Constitution may proceed against the State when a constitutional provision authorizes suit. But claims grounded in federal law are categorically barred by article 5, section 20. The result is a system in which state-created rights are judicially enforceable against the State, while federal rights are not—even when both arise from the same underlying conduct.

That asymmetry is not neutral. It does not turn on the identity of the defendant or the structure of the courts. It turns on the source of the right asserted. And the Supreme Court has been clear: a state may not "dissociate [itself] from federal law because of disagreement with its content or a refusal to recognize the superior authority of its source."[8] Nor may it structure its law so as to "nullify a federal right or cause of action."[9]

To be sure, sovereign immunity remains a fundamental limitation on the State's amenability to suit. But it does not authorize a state to prefer its own law over federal law where its courts otherwise provide a forum for relief. Once a state permits suits against itself for a class of claims, it may not exclude federal claims arising from the same type of governmental conduct simply because those claims arise under federal law.

Here, Arkansas has chosen—through its Constitution—to permit certain claims against the State. Having opened its courts to that class of claims, it may not close them to federal claims by invoking article 5, section 20 as an absolute bar. To do so is not merely to preserve sovereign immunity; it is to use sovereign immunity as a device to displace

---

[8]*Howlett*, 496 U.S. at 371.

[9]*Haywood*, 556 U.S. at 736–37.

13

federal law within the State's own judicial system. That is precisely what the Supremacy Clause forbids.

None of this is to say that Mays's federal claims will ultimately succeed. Federal law may independently limit whether those claims lie against AHP. But those are questions of federal statutory scope and claim viability—not threshold questions of sovereign immunity under article 5, section 20. They should be addressed in the ordinary course of litigation, not resolved prematurely in an interlocutory appeal limited to immunity.

At this stage, the only question is whether article 5, section 20 independently bars Mays's federal claims. It cannot. A state may not invoke its own constitution to categorically disable federal causes of action in its courts.

Because the majority affirms dismissal of the federal claims on sovereign-immunity grounds, I respectfully concur in part and dissent in part.

*Tim Griffin*, Att'y Gen., by: *Carl F. "Trey" Cooper III*, Sr. Ass't Att'y Gen., for appellant.

*Daily & Woods, PLLC*, by: *Douglas M. Carson*, for appellee.